## Marbach v. F. A. North Company, Appellant.

*Contract—Due bill—Evidence.*

Where a due bill states on its face that it "is neither transferable nor negotiable, and is only payable by an allowance of the amount hereof on the leasing or purchase by the payee of a new piano at regular selling price," and that it must be presented at the time of selection of new instrument, the payor is not justified

in refusing to accept the bill where it is presented by a daughter of the payee acting for him, at a time when a third person under an agreement with the payee, has selected a new piano at the regular selling price for his own use; nor can the payor impose as a condition of the acceptance of the bill, that it should only be on the sale of a piano on the installment plan.

In such a case where the daughter of the payee is asked on cross-examination her reason for doing a certain act, objection cannot be made to her answer because it involved a statement as to certain information that her father gave her.

Argued Nov. 26, 1915. Appeal, No. 267, Oct. T., 1915, by defendant, from judgment of C. P. No. 2, March T., 1912, No. 4275, on verdict for plaintiff in case of Lizzie Marbach, Executrix of Jacob Marbach, deceased, v. F. A. North Company. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Assumpsit on due bill. Before BARRATT, J.

At the trial it appeared that suit was brought to recover the aggregate amount of twelve due bills similar in form, but varying in amount.

The general form of these due bills was as follows:

"F. A. North Co.,                                        No. 177.

      "1308 Chestnut Street,

                 "Philadelphia, Jan. 31st, 1908.

"Due to Jacob Marbach...................., the sum of Fifty-one Dollars ..............................
($51.00), being the amount for wagon work taken in exchange.

"This due bill is neither transferable nor negotiable and is only payable by an allowance of the amount hereof, on the leasing or purchase by said Jacob Marbach of a new Lester Piano at regular selling price.

"This due bill must be presented at the time of selection of new instrument.

               "(Signed) F. A. NORTH COMPANY."

The testimony tended to show that Mary Ettel, a daughter of the plaintiff acting for her father called at

defendant's store accompanied by one Frederick Seegar, and that Seegar selected a piano for his own use, and that Mrs. Ettel tendered the due bills which amounted to $229.80, and a check for $70.20 in payment of the $300.00, the purchase-price of the piano selected by Seeger.

When Mary Ettel was on the stand she testified in part as follows:

Q.—You offered them the due bills, which amounted to $229.80, did you?

A.—$229.80.

Q.—How did you offer to pay the rest of the money?

A.—In a check from my father.

Q.—The check was made out?

A.—The check was made out; yes.

Q.—For what amount?

A.—$70.00, I guess, and twenty cents.

Q.—Was the check made out for $70.20?

A.—The check was made out for the difference between $300.00 and $229.80.

Q.—That was made out when you went in there, was it?

A.—Yes. I will tell you why, because——

Q.—Tell the jury how in the world you fixed the amount at $70.20 and went there with that amount on a check already prepared?

A.—Because we sold two pianos before. We sold one to the church and they just took that due bill, they didn't want to be exposed in the church piano, and they took the due bills.

Q.—Just keep yourself confined to this case.

A.—My father said to the people, "They sell those pianos for $300.00, and I don't want you to be stuck; they sell those pianos that cost $425.00 for $300.00," and we sold another one and they settled before we left it come to court. The man said——

Mr. Chapman: I object to this, your honor.

A.—I am in business, you know. I know how to talk.

By the Court:

Q.—What business are you in?

A.—The meat business.

Mr. Chapman: I object to her telling things that she herself could not have heard, but must be hearsay.

The Court: But you asked her the question why she had the check for the difference between the $229.00 and the $300.00. She is telling you why.

By Mr. Chapman:

Q.—You mean to say that when you went there, before you even went to the store, you had a check of your father's for $70.20?

A.—Yes, sir; I do.

Mr. Scott: She told you about the other transactions, and she was answering your question why she took a check for that amount with him. You have interrupted her before she was through with her answer.

Mr. Chapman: I object to it.

The Court: Then you withdraw the question, do you?

Mr. Chapman: No, sir; I do not.

The Court: Then I guess you will have to let her finish the answer.

A.—This other gentleman went down to buy a piano, and he said he wanted it for three hundred. They said they couldn't take it.

By Mr. Chapman:

Q.—Were you with him?

A.—No.

Mr. Chapman: Then I object.

A.—That is why I took the difference between the due bills and the $300.00,—because they sold those pianos to us the same way before for $300.00.

The Court: I think that this is entirely proper, in answer to your question as to her reason for taking that check. You asked the question. She is telling you that these things are the reasons why she took it. She is entitled to give her reasons in answer to your question, unless you withdraw the question.

Mr. Chapman: Will your honor give me an exception? Exception (1).

The court charged in part as follows:

[Here the critical point in the case arises. The defendant wants you to believe that this was not a new Lester piano, and that three hundred dollars was not the regular price, nor was three hundred and thirty dollars, which was also offered by the daughter, according to her statement, the regular price. The defendant tells you that the regular price was something over four hundred dollars. Well, it is for you to say, under this evidence, whether there was any regular price, in view of the "jewing down" as one of the witnesses put it. A regular price means a regular price. You are men of common sense and have had business dealings, and you will have to determine what was the regular selling price of this piano, if there was any regular selling price. If the amount agreed upon by the salesman was the regular price, that is to say, the price that the defendant was willing to sell that piano to a regular buyer in the regular course of a regular business, then the plaintiff was offering to buy the piano at the regular price, and the due bills, under their terms, had to be accepted by the defendant.]    (3)

[Now, as to the "new Lester piano," the plaintiff's daughter and the man who wanted it both tell you that they were told by the salesman that the piano was new, or that if it was not they were not told that it was not. Well, if they were buying this piano without having been informed that it was not a new piano, then, whether it was new or was old, the defendant company could not take advantage of the fact, if it was an old piano, that the due bill provided for a new one. The defendant's salesman tells you that he informed the plaintiff's daughter and the man who wanted to buy the piano that it was a second-handed piano, and the musician who went there with the man who wanted the piano tells you that he was informed privately by the salesman that the piano was

second-handed, or not second-handed, but shopworn.]
(4)

Verdict and judgment for plaintiff for $275.00. Defendant appealed.

*Errors assigned,* among others, were (1) rulings on evidence quoting the bill of exceptions and (3, 4) above instructions quoting them.

*Francis Chapman,* with him *S. Spencer Chapman,* for appellant.—As a matter of law, the provision that the bills should be neither negotiable nor transferable, and should be payable only in a particular manner and to a particular person, is entirely legal and proper. There is in it absolutely nothing contrary to public policy or which in the slightest degree affects public morals or welfare: Adinolfi v. Hazlett, 242 Pa. 25; Tabler v. Sheffield Land, Iron & Coal Co., 79 Ala. 377; Omaha v. Standard Oil Co., 55 Neb. 337; Barringer v. Bes Line Construction Co., 23 Okla. 131; Arkansas Valley Smelting Co. v. Belden Mining Co., 127 U. S. 379.

*Henry J. Scott,* for appellee.

OPINION BY KEPHART, J., April 17, 1916:

The due bills upon which this action is based contained provisions against negotiability and could only be paid by an allowance or credit on the leasing or purchasing of a piano by Jacob Marbach at regular selling prices. The appellee alleging a compliance with the terms of the due bill, and the refusal of the appellant to honor them, brings this action to recover their amount. The act of the appellee in having Seegar bargain for the piano was not a violation of the provisions of the due bill that Marbach was to purchase it; nor would it have been a violation of that provision if the sale had been made directly to Seegar, and the due bills and cash presented to the appellant in payment thereof; as the

defendant had by its prior conduct in accepting similar transactions made by Marbach clearly evidenced its interpretation of this clause of the contract to mean that the purchases need not be made directly for Marbach. There was, however, ample testimony for the jury to find that the purchase in this instance had been made for Marbach through his daughter as agent, and the refusal to accept due bills with the balance in cash or check by the defendant was not warranted. But the defendant in refusing the due bills attached a new condition to their payment, in that they were to be accepted only on sales of pianos made on the installment plan. This was clearly a breach of the contract contained in the due bill and whatever may have been the situation with respect to the sale complained of, when the defendant attached this new condition to the due bill without the consent of the appellee it placed the appellee in position to immediately sue for the amounts represented by these due bills. There was, however, no attempt to negotiate or transfer the bills to a third party, or use them as a means of credit beyond that contemplated by the due bill, and there was evidence to sustain the finding that the piano was sold as a new piano.

The assignment complaining of the admission of certain evidence cannot be sustained. The defendant asked appellee's daughter, on cross-examination, her reason for doing a certain act; the answer involved a statement as to certain information that her father gave her. The question was to test the good faith of the witness and her entire reason was material as long as the defendant persisted in his question. The girl was acting under the direction of her father, by virtue of the information he gave her; that was her reason for doing the act. Moreover, while the answer developed a statement made to the witness by her father later on in the testimony, she states this fact as being within her own knowledge, giving instances as to the time of its separate occurrences. The case was submitted by the learned trial

judge in a charge that was free from substantial error. The case was clearly one for the jury on the facts as presented.

The assignments of error are overruled, and the judgment is affirmed.